**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 01-20977**

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**VICTOR HUGO CASTRO, also known as Torvic,**
**also known as Torby,**

**Defendant-Appellant.**

Appeal from the United States District Court
For the Southern District of Texas

(H-00-CR-30-2)

September 5, 2002

Before DeMOSS, STEWART, and DENNIS, Circuit Judges.

DeMOSS, Circuit Judge:[*]

The Appellant, Victor Hugo Castro ("Castro"), was charged in an indictment with six counts of aiding and abetting with intent to distribute a controlled substance and one count of conspiracy to possess with intent to distribute a controlled substance. On

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

September 18, 2000, Castro entered a plea of guilty to the conspiracy count. The government then dismissed the remaining counts. Castro was sentenced to a term of imprisonment of 189 months on June 22, 2001. Castro now appeals this sentence.

## BACKGROUND

Between June and September of 1998, the United States conducted court authorized wire interception on Jorge Castro's pager, home telephone and cellular phone.[2] These interceptions led to the surveillance of several other individuals who were later indicted for conspiracy and other drug charges. Among those that were under surveillance was the Appellant, Castro. The wire interceptions and surveillance revealed that Castro was involved in cocaine and crack cocaine trafficking, and the government alleges that these also revealed that Castro was a manager of the drug trafficking activities.

Castro was charged, along with Jorge Eliecer Castro, Jhoymar Angulo-Castro, Nurya Jamileth Estrada, Absalon Murillo-Gamboa and Javier Martinez Sanchez, by indictment on January 19, 2000, in the United States Court for the Southern District of Texas, with conspiracy to possess with intent to distribute five kilograms or more of a mixture or substance containing cocaine and 50 grams or more of a mixture or substance containing cocaine base or crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 21

---

[2]Jorge Castro is the Appellant's brother.

2

U.S.C. § 846 (count 1), and six counts of aiding and abetting with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(B) and (b)(1)(C) and 18 U.S.C. § 2 (counts 3-8). Castro entered a plea of guilty to count one of the indictment and was sentenced to 189 months confinement and to a five-year term of supervised release. The district court also ordered Castro to pay a $100 special assessment and a $5,000 fine. The remaining counts were dismissed on a motion by the government. Castro now appeals claiming that the district court erred in not considering his status as an illegal alien when sentencing him, that it erred in assessing a three level enhancement due to his role as a manager and that it erred in holding him accountable for 231 grams of crack cocaine in light of *Apprendi*.

## DISCUSSION

The timeliness of Castro's appeal.

The district court sentenced Castro on June 22, 2001, and entered judgment on July 5, 2001. Apparently, the notice of entry of judgment was inadvertently sent to the wrong attorney and Castro's attorney was not notified of the mistake until July 31, 2001, at which time Castro's counsel filed a Motion for Extension of Time to File Notice of Appeal. The district court ruled on his motion on September 20, 2001, and granted Castro until October 1,

3

2001, to file his Notice of Appeal.  Castro's Notice of Appeal was then filed on September 24, 2001.

Under Fed. R. App. P. 3(a), "[a]n appeal permitted by law as of right from a district court to a court of appeals may be taken only by filing a notice of appeal with the clerk of the district court within the time allowed by Rule 4."  "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review."  *Smith v. Barry*, 502 U.S. 244, 248 (1992). According to Rule 4(b), a notice of appeal in a criminal case must be filed in the district court within 10 days of entry of the judgment.  Fed. R. App. P. 4(b).  However, "[u]pon a finding of excusable neglect or good cause, the district court may - **before or after the time has expired**, with or without motion and notice - extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule (4)(b)."  Fed. R. App. P. 4(b)(4) (emphasis added).

Though the district court could extend the time to file, this would still limit the time to file to the ten-plus-thirty days provided for in Fed. R. App. P. 4(b) and September 24 was beyond that time range.  However, "[i]f a document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is effective as a notice of appeal."  *Smith*, 502 U.S. at 248-49.  The Motion for Extension of Time to File was filed on July 31, 2001, within the ten-plus-thirty day time limit.  The motion also

4

identified the parties taking the appeal, the judgment being appealed from and that it was appealing the matter to the court of appeals. It therefore can act as the functional equivalent of a Notice of Appeal. *See* **Andrade v. California**, 270 F.3d 743, 751-52 (9th Cir. 2001) (noting that such motions are functional equivalents when the motion identifies the parties taking the appeal, the judgment or order being appealed from and the court to which the appeal is taken); **Dillon v. United States**, 184 F.3d 556, 557 (6th Cir. 1999) ("[W]here only one avenue of appeal exists, Rule 3(c)(1)(C) is satisfied even if the notice of appeal does not name the appellate court.").

<u>Castro's Motion for Downward Departure based on his alien status</u>

Castro contends that the district court abused its discretion in denying his motion for departure based on his deportable alien status. Prior to sentencing, Castro objected to the presentence report on the ground that it failed to state that he was a deportable alien who would do 100 percent of his sentence as opposed to the usual 85 percent for inmates who are U.S. citizens. At sentencing, defense counsel did not expand on his motion, and the district court found that the mere fact that Castro was a deportable alien did not place his case outside the heartland of the guidelines.

This Court has jurisdiction to review a defendant's challenge to a sentence "only if it was imposed in violation of law; was

5

imposed as a result of a misapplication of the sentencing guidelines; was the result of an upward departure; or was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable. *United States v. DiMarco*, 46 F.3d 476, 477 (5th Cir. 1995) (citing 18 U.S.C. § 3742(a)). "The imposition of a lawful sentence coupled with the decision not to depart from the guidelines provides no ground for relief." *Id.* (citing *United States v. Miro*, 29 F.3d 194, 198-99 (5th Cir. 1994). However, a district court's refusal to depart from the guidelines can be reviewed by this Court only if the district court based its decision upon an erroneous belief that it lacked the authority to depart. *United States v. Valencia-Gonzales*, 172 F.3d 344, 346 (5th Cir. 1999); *DiMarco*, 46 F.3d at 478 (noting that other circuits have held that "appellate review is available for claims that the district court erroneously believed that it lacked authority to depart from the sentencing guideline range"); *United States v. Wilson*, 249 F.3d 366, 380 (5th Cir. 2001). The burden of proving a misapplication of the Guidelines is on the party challenging the sentence on appeal. *United States v. Corley*, 978 F.2d 185, 186 (5th Cir. 1992).

Castro argues that the district court erred because it failed to take into consideration the Supreme Court's decision in *United States v. Koon*, 518 U.S. 81 (1996), which held that district courts have broad discretion to depart from the Guidelines when a

6

particular case is outside the "heartland" of Guideline cases. Under the standard articulated above, however, we can only review the district court's decision if it was made under the mistaken belief that it could not consider his deportable status. Therefore, in order to review the decision, "something in the record must indicate that the district court held such an erroneous belief." *United States v. Landerman*, 167 F.3d 895, 899 (5th Cir. 1999). "[A] district court's summary denial without explanation does not indicate any such erroneous belief." *Valencia-Gonzales*, 172 F.3d at 346 (citing *United States v. Aggarwal*, 17 F.3d 737, 745 (5th Cir. 1994)). Nothing asserted by Castro leads us to believe that the district court was ignorant of the *Koon* decision or felt constrained from considering his deportable status. Quite to the contrary, the district court stated, with regard to the motion for downward departure, that "[i]t's not out of the heartland, and I'm going to deny your motion for a downward departure." As Castro has failed to demonstrate that the district court was operating under an erroneous understanding of the law when it denied his motion, his argument fails.

<u>The district court's finding that Castro was a manager</u>

Castro contends that the district court misapplied the Guidelines when it increased his offense level under U.S.S.G. § 3B1.1(b). He bases this allegation on the fact that the district court did not issue specific findings that he exercised some degree

of control over at least four other participants. Castro also contends that, in light of ***Apprendi v. New Jersey***, 530 U.S. 466 (2000), this issue should have been submitted to a jury.

Under U.S.S.G. § 3B1.1(b), a three level increase is permitted "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). "Proof that the defendant supervised only one other culpable participant is sufficient to make the defendant eligible for the enhancement." ***United States v. Cooper***, 274 F.3d 230, 247 (5th Cir. 2001). Also, in calculating the number of participants, the defendant may be included among the five. ***United States v. Wilder***, 15 F.3d 1292, 1299 (5th Cir. 1994). In determining whether a defendant is a leader, a court should consider the following factors: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, comment. (n.4). We review such a factual finding for clear error. ***United States v. Thomas***, 120 F.3d 564, 574 (5th Cir. 1997).

At sentencing, the prosecutor introduced portions of recorded conversations between Castro and Absalon Murillo-Gamboa which could reasonably be construed as implicating Castro as a manager. Other intercepted wire communications involving Castro were also presented. After hearing arguments and reviewing the evidence presented, the district court found that the preponderance of the credible evidence supported the three point enhancement. The district court also later adopted the presentence report's findings of facts and application of the Guidelines to the facts. The presentence report's summary of Castro's role in the offense states:

> Victor Castro is the brother of Jorge Castro and was a manager in this cocaine trafficking organization. When Jorge Castro was out of the county in July/August, 1998, Victor Castro was in charge of the operation. He recruited Hans Fajardo and Jhoymer Angulo-Castro to participate in the distribution of narcotics. Victor Castro participated and coordinated several drug transaction [sic] including those occurring on July 10, 1998; August 11, 1998; September 1, 8, 11, 1998; and February 10, 1999. According to the DEA agent, Victor Castro had a separate source of supply for the cocaine base. He is held accountable for 4.75 kilograms of cocaine powder and 231 grams of cocaine base. As the manager he should receive a three-level upward adjustment for his role in the offense.

"Ordinarily, a PSR [presentence report] bears sufficient indicia of reliability to be considered as evidence by the sentencing judge when making factual determinations." *Cooper*, 274 F.3d at 239 (citing *United States v. Narviz-Guerra*, 148 F.3d 530, 537 (5th Cir.

9

1998)).  "The district court may adopt the facts contained in the PSR without further inquiry if the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence."  *Id.* (citing *United States v. Alford*, 142 F.3d 825, 832 (5th Cir. 1998)).  In the present case, it is clear that the district court not only considered the evidence as to whether the adjustment was justified, but also permissibly relied upon the presentence report for its findings of fact.  As such, Castro has failed to demonstrate how the district court's decision was clearly erroneous.

As for Castro's claim that this issue should have been presented to a jury, this Court has held that "error under *Apprendi* requires reversal only if a defendant's sentence exceeds the statutory maximum."  *Cooper*, 274 F.3d at 243; *United States v. Keith*, 230 F.3d 784, 787 (5th Cir. 2000); *United States v. Doggett*, 230 F.3d 160, 165 (5th Cir. 2000) (stating that even if a drug amount is not alleged in the indictment, *Apprendi* does not apply where the sentence is less than the statutory maximum provided by 21 U.S.C. § 841(b)(1)(C)).  The count to which Castro entered a plea of guilty alleged that he conspired to possess with intent to distribute five kilograms or more of a mixture or substance containing cocaine and 50 grams or more of a mixture or substance containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846.  This offense has a statutory punishment

10

range of 10 years to life imprisonment. *See* 21 U.S.C. §841(b)(1)(A). Castro's sentence of 189 months falls within this statutory range, therefore, **Apprendi** does not apply.

<u>The district court's finding that Castro was accountable for 231 grams of crack cocaine</u>

Relying on **Apprendi**, Castro contends that the district court erred in holding him accountable for 231 grams of cocaine base without having submitted the underlying facts supporting the Guideline adjustment to a jury. As explained above, Castro's sentence fell within the statutory range set forth for the crime to which he entered a guilty plea. Therefore, **Apprendi** does not apply. Castro also contends, citing **United States v. Crockett**, 82 F.3d 722 (7th Cir. 1996)), that the mere fact that he engaged in other drug transactions is not sufficient to justify treating those transactions as "relevant conduct" for sentencing purposes.

Castro's argument is misplaced. **Crockett** expressed a concern over whether or not there was a specific finding that the other drug transactions were part of a common scheme or plan involving the charged offense. **Id.** at 730. In the present case, the presentence report clearly states that Castro was accountable for "4.75 kilograms of cocaine powder and 231 grams of cocaine base." As stated above, the district court permissibly adopted the presentence report's findings and Castro has failed to show any evidence that would rebut this finding.

11

**CONCLUSION**

Having carefully reviewed the record of this case and the parties' respective briefing and for the reasons set forth above, we conclude that the district court did not err in refusing to grant Castro a downward departure in his sentence or in enhancing his sentence. We therefore AFFIRM the district court's sentence.

**AFFIRMED.**